IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRECOM SYSTEMS GROUP, INC.,<br>Plaintiff,<br><br>v.<br><br>MJ FREEWAY, LLC, and AKERNA CORPORATION,<br>Defendants. | :<br>:<br>:<br>: Case No. _____<br>:<br>:<br>:<br>: ELECTRONICALLY FILED<br>:<br>:<br>:<br>:<br>: |

# COMPLAINT

Plaintiff TreCom Systems Group, Inc., by and through undersigned counsel, complains and alleges as follows:

## NATURE OF THE CASE

1. Defendant MJ Freeway, LLC, took advantage of TreCom's status as one of the oldest and most respected Black-owned information technology companies in Pennsylvania to obtain a lucrative contract with the Pennsylvania Department of Health that called for MJ Freeway to serve as the prime contractor and TreCom as the subcontractor.

2. The subcontractor agreement between MJ Freeway and TreCom runs for an initial term of five years from April 2017 through April 2022, plus three option years that are renewable at the sole discretion of the Commonwealth of Pennsylvania.

3. Despite full and consistently excellent performance on the part of TreCom, MJ Freeway issued a notice of termination of the subcontractor agreement in August 2020.

4. MJ Freeway had no contractual right to terminate the subcontractor agreement, and the Commonwealth of Pennsylvania swiftly requested MJ Freeway to rescind the notice of termination.

5. Nevertheless, despite continuing to use TreCom's services as a subcontractor, MJ Freeway and its parent company, Defendant Akerna Corporation, have not paid TreCom since issuing the termination notice in August 2020, and evidently has no intention of ever again making contractually required payments to TreCom.

6. As a result, TreCom has suffered and continues to suffer devastating financial losses that threaten its continued existence.

## PARTIES

7. Plaintiff TreCom Systems Group, Inc., is a Pennsylvania corporation with a principal place of business at 700 E Township Line Rd., No. 205, Havertown, PA 19083.

8. Defendant MJ Freeway, LLC, is a Colorado limited liability company with a principal place of business at 1601 Araphoe St., Suite 900, Denver, CO 80202.

9. Defendant Akerna Corporation, the parent company of MJ Freeway,[1] is a Colorado corporation with a principal place of business at 1630 Welton St., 4th Floor, Denver, CO 80202.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because TreCom is a corporate citizen of the Commonwealth of Pennsylvania, MJ Freeway and Akerna are corporate citizens of the State of Colorado, and the amount in controversy exceeds $75,000.

11. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to TreCom's claims against MJ Freeway and Akerna occurred within the Eastern District of Pennsylvania.

---

[1] *See* https://akerna.mediaroom.com/2021-01-15-Akerna-Reveals-Top-5-Cannabis-Sales-Days-of-2020 (referencing "Akerna's MJ Freeway subsidiary"); https://www.sec.gov/Archives/edgar/data/1755953/000121390019013006/fs32019ex21-1_akernacorp.htm (listing MJ Freeway as a subsidiary of Akerna).

**FACTUAL ALLEGATIONS**

A.     **Background**

12. On or about December 15, 2016, the Commonwealth of Pennsylvania issued a request for quotations and an invitation to qualify to provide information technology services related to the implementation of a new medical marijuana program the Pennsylvania Department of Health was to oversee.

13. Per the terms of the request for quotation, the evaluation criteria for respondents involved a numerical grading system for each respondent's proposal, with 20% of the total points to be based on the extent of participation by small businesses and small diverse businesses, as certified by the Pennsylvania Department of General Services Bureau of Diversity, Inclusion & Small Business Opportunities.

14. MJ Freeway and Akerna are not certified as small businesses or small diverse businesses.

15. In contrast, TreCom is certified with the Pennsylvania Department of General Services Bureau of Diversity, Inclusion & Small Business Opportunities as a small diverse business.

16. On April 18, 2017, the Commonwealth awarded the prime contract to MJ Freeway, subject to a requirement that at least 35.09% of the work under that contract would be performed by TreCom.

17. The parties agreed between themselves that TreCom would receive a total of $3,379,714.11 in payments for the first five years of the contract, which represented 35.09% of the payments the Commonwealth was to make to MJ Freeway during the same period, as well as the

3

same percentage of any revenue received in any of three subsequent option years the Commonwealth had the right to exercise.

18. There were two subcontractor agreements between MJ Freeway and TreCom.

19. The parties executed the first subcontractor agreement, which MJ Freeway or its attorneys drafted, on May 4, 2017.

20. Three weeks later, on May 26, 2017, Amy Poinsett, the chief executive officer of MJ Freeway, e-mailed Phillip R. Gring, the chief operating officer of TreCom, to request that he execute a new subcontractor agreement in a standard form preferred by the Commonwealth.

21. MJ Freeway and TreCom executed the new subcontractor agreement on May 26, 2017.

**B.     Key Terms of the Operative Subcontractor Agreement**

22. The May 26, 2017 subcontractor agreement is reproduced as Exhibit A to this complaint and incorporated by reference as if fully set forth herein.

23. That agreement, though signed on May 26, 2017, sets forth the parties' obligations to one another from April 17, 2017, until April 17, 2022, plus up to three option years to be awarded at the sole discretion of the Commonwealth.

24. As stated, the May 26, 2017 subcontractor agreement calls for TreCom to perform 35.09% of the work in exchange for $3,379,714.11 over the first five years of the contract, as well as 35.09% of any revenue received by MJ Freeway in any of three subsequent option years the Commonwealth had the right to exercise.

25. Per paragraph 22 of the May 26, 2017 subcontractor agreement, that "Subcontract constitutes the entire agreement of the Parties regarding the subject of this Subcontract as of the

date of execution. No other agreement or understandings, verbal or written, expressed or implied, are a part of this Subcontract unless specified herein."

26. Accordingly, the May 26, 2017 subcontractor agreement superseded and replaced the May 4, 2017 agreement.

27. The May 26, 2017 agreement, unlike the superseded May 4, 2017 agreement, does not authorize MJ Freeway to terminate the contract without TreCom's consent.

### C. Performance and Change Orders

28. MJ Freeway has never expressed dissatisfaction with TreCom's performance of its obligations under the May 26, 2017 subcontractor agreement, much less good and lawful cause to terminate the agreement.

29. Quite the contrary, at MJ Freeway's request the parties have executed numerous change orders to the May 26, 2017 subcontractor agreement that have called for TreCom to perform even more services than were covered by the original agreement in exchange for additional compensation.

30. These change orders are reproduced as Exhibit B to this complaint and incorporated by reference as if fully set forth herein.

31. In particular, MJ Freeway offered and agreed to pay TreCom the following additional compensation for services beyond those covered in the original subcontractor agreement:

   a. $25,000 for new and additional services from July 10, 2017, through October 28, 2017.

   b. $47,800 for new and additional services from October 29, 2017, through January 31, 2018.

Nothing

    c.    $71,700 for new and additional services from February 1, 2018, through April 30, 2018.

    d.    $47,800 for new and additional services from May 1, 2018, through June 30, 2018.

    e.    $462,000 for new and additional services from July 1, 2018, through December 21, 2018.

    f.    $462,000 for new and additional services from January 1, 2019, through June 30, 2019.

    g.    $462,000 for new and additional services from July 1, 2019, through December 31, 2019.

    h.    $231,000 for new and additional services from January 1, 2020, through March 31, 2020.

    i.    $231,00 for new and additional services from April 1, 2020, through June 3, 2020.

    j.    $86,985 for new and additional services from July 1, 2020, through August 3, 2020.

32.    These change orders have added $2,167,285 to the original $3,379,714.11 MJ Freeway owes TreCom through the first five years of the subcontractor agreement, for a total of $5,546,999.11.

33.    In addition, MJ Freeway will owe TreCom at least 35.09% of any money it receives from the Commonwealth from April 18, 2022 until April 17, 2025, should the Commonwealth elect to exercise any or all of three option years included in the prime contract.

### D. Defendants' Unlawful Termination Notice and Associated Breaches

34. By letter dated August 4, 2020, MJ Freeway notified TreCom of its intent to terminate the subcontractor agreement in thirty days.

35. That letter, which contained no explanation for the planned termination, cited Section 12.1 of the subcontractor agreement as ostensible support for MJ Freeway's claimed right to terminate the agreement.

36. In fact, however, the May 26, 2017 subcontractor agreement contained neither a Section 12.1 nor a provision authorizing MJ Freeway to terminate the agreement without TreCom's consent.

37. Instead, MJ Freeway was erroneously invoking the May 4, 2017 agreement, which had long since been replaced and superseded by the May 26, 2017 agreement.

38. By letter dated August 26, 2020, the Pennsylvania Department of General Services advised MJ Freeway that its notice of termination was "entirely unacceptable and contrary to its contractual obligations to the Commonwealth," and requested that MJ Freeway immediately rescind the notice.

39. Nevertheless, MJ Freeway did not rescind the notice of termination, and has not made any of its contractually required payments to TreCom since August 2020.

40. In September 2020, Mr. Gring, TreCom's COO, sent an invoice to Akerna via e-mail, as per the parties' usual practice.

41. After initially receiving assurances from Akerna's corporate controller, Kristen Naughton, that she would "figure out where these have been getting held up in our process" so as to ensure timely payment to TreCom, Mr. Gring received an e-mail from Akerna's COO, Ray

Thompson, attaching a letter from "our attorneys" (*i.e.*, Akerna and MJ Freeway's shared attorneys) stating that TreCom would not be paid further.

42. Remarkably though, despite having stopped all payments and purported to terminate the contract, MJ Freeway continues to treat TreCom as a subcontractor and place requests for services and equipment related to the subcontractor agreement with TreCom.

43. By letter dated January 6, 2021, the Pennsylvania Department of General Services again requested MJ Freeway to rescind its improper notice of termination, and further explained that, "even in the absence of a written rescission, MJ Freeway's continuing use of TreCom along with their contractual obligation to the Commonwealth to continue to use TreCom for this contract has rendered the Notice of Termination effectively rescinded."

44. Nevertheless, MJ Freeway, in coordination with its parent company Akerna, refuses to make any of the contractually required payments to TreCom.

**E.    Damages to TreCom**

45. The financial damages to TreCom have been devastating and threaten its continued existence.

46. MJ Freeway and Akerna have wrongfully withheld many hundreds of thousands of dollars in payments they owe to TreCom for services rendered to date, and that figure is likely to grow into the millions because Defendants' contractual violations are ongoing and apparently permanent. These damages will continue to accrue through at least April 2022, and will extend into April 2025 should the Commonwealth exercise its exclusive right to continue the contract for an additional three years.

47. Meanwhile, TreCom, a small business struggling to survive in the midst of the Covid-19 pandemic, has been forced to expend substantial resources on personnel and equipment

as it has fulfilled and continues to fulfill its own duties under the subcontractor agreement without recompence.

## **CLAIMS FOR RELIEF**
### (Plaintiff v. All Defendants)

### **COUNT I—BREACH OF CONTRACT**

48. All of the above paragraphs are incorporated by reference as if set forth in full here.

49. The May 26, 2017 subcontractor agreement and associated change orders constitute a binding contract between TreCom and MJ Freeway.

50. The essential terms of the contract are that TreCom will perform certain information technology services for payments totaling $5,546,999.11 from April 17, 2017, through April 17, 2022, plus 35.09% of any payments MJ Freeway received from the Commonwealth during any of the three option years the Commonwealth has the right to exercise through April 17, 2025.

51. TreCom has fulfilled and continues to fulfill all of its obligations under the contract.

52. Nevertheless, MJ Freeway has failed to make any of the contractually mandated payments to TreCom since August 2020.

53. By this failure, MJ Freeway has breached and continues to breach its contractual obligations to TreCom.

54. Because payments under the contract ordinarily were made by MJ Freeway's parent company Akerna, and high ranking officers of Akerna conveyed the message to TreCom that it no longer would be paid, the circumstances of this case support a reasonable inference that Akerna directed or otherwise participated in MJ Freeway's breach of its contractual obligations to TreCom.

55. As a direct and proximate consequence of Defendants' ongoing breach of contract, TreCom is now suffering and will continue to suffer irreparable injury and monetary damages unless and until this Court grants the relief requested herein.

56. No previous litigation has been brought concerning the subject matter of this complaint or seeking the relief requested herein.

57. Wherefore, TreCom prays for relief as set forth below.

## COUNT II—UNJUST ENRICHMENT
### (Plaintiff v. All Defendants)

58. All of the above paragraphs are incorporated by reference as if set forth in full here.

59. TreCom has conferred—and continues to confer—substantial benefits upon MJ Freeway and Akerna by performing extensive information technology services and supplying related equipment since April 2017.

60. MJ Freeway and Akerna have appreciated all of the benefits TreCom has conferred.

61. Indeed, MJ Freeway requested and continues to request those benefits.

62. Again, because payments under the contract ordinarily were made by MJ Freeway's parent company Akerna, and high ranking officers of Akerna conveyed the message to TreCom that it no longer would be paid, the circumstances of this case support the reasonable inference that Akerna directed or otherwise participated in the decision to accept benefits from TreCom without making corresponding payments.

63. Under the circumstances set forth in this complaint, it would be inequitable for MJ Freeway and Akerna to retain the benefits conferred by TreCom without corresponding payment of value.

64. MJ Freeway and Akerna have not made any payment of value for the benefits conferred by TreCom since August 2020.

65. As a result of Defendants' unjust enrichment, Defendants are indebted to TreCom for the value of the uncompensated benefits TreCom has conferred to them.

66. Wherefore, TreCom prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff TreCom Systems Group, Inc., prays for the entry of judgment as follows:

1. Declaring that Defendants MJ Freeway, LLC, and Akerna Corporation have breached their contractual obligations to Plaintiff;

2. Awarding actual damages to Plaintiff in an amount subject to proof;

3. Ordering restitution of all benefits by which Defendants were unjustly enriched;

4. Ordering disgorgement of all ill-gotten gains obtained by Defendants through their misconduct;

5. Issuing a temporary and permanent injunction prohibiting Defendants from engaging in the same wrongful conduct going forward;

6. Awarding pre-judgment and post-judgment interest at the maximum rate permitted by law;

7. Reimbursing litigation costs incurred by Plaintiff in connection with this action; and

8. Issuing such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Peter Carr
Peter Carr
Wadud Ahmad
**Ahmad Zaffarese LLC**
*Attorneys for TreCom Systems Group, Inc.*

Date: April 2, 2021