# APPENDIX N

# MODEL FORM OF SMALL DIVERSE AND SMALL BUSINESS SUBCONTRACTOR AGREEMENT

This Subcontractor Agreement ("Subcontract") is made effective as of April 18, 2017, by and between MJ Freeway LLC, ("Contractor") and TreCom Systems Group, Inc., a Small Diverse Business or Small Business ("Subcontractor") (collectively referred to as the "Parties").

## RECITALS

Contractor has entered into a contract dated April 18, 2017 (the "Prime Contract") with the Department of General Services of the Commonwealth of Pennsylvania ("Commonwealth"). Under the Prime Contract, Contractor has agreed to provide certain supplies, services or construction ("Services") to the Commonwealth.

In connection with the Procurement leading to the Prime Contract, Contractor and Subcontractor entered into a letter agreement dated April 6, 2017 ("Letter of Intent") whereby the Contractor committed a certain percentage of work ("Small Diverse Business or  Small Business Commitment") under the Prime Contract to the Subcontractor.

As contemplated by the Letter of Intent and in accordance with the provisions of the Procurement and Prime Contract, the Parties have agreed to enter into this Subcontract to fulfill the Small Diverse Business or Small Business Commitment expressed in the Letter of Intent and as required by the Prime Contract.

## DEFINITIONS

The following words and terms when used in this Subcontract shall have the following meanings:

*Bureau* – The Department's Bureau of Diversity, Inclusion and Small Business Opportunities.

*Contracting Officer* – The person authorized to administer and make written determinations for the Commonwealth with respect to the Prime Contract.

*Department* – The Department of General Services of the Commonwealth of Pennsylvania.

*Issuing Office* – The department, board, commission or other agency of the Commonwealth of Pennsylvania that issued the Procurement.

*Procurement* – The Invitation for Bids, Request for Quotes, Request for Proposals or other solicitation and all associated final procurement documentation issued by the Commonwealth to obtain proposals from firms for award of the Prime Contract.

*Small Business* – A business in the United States which is independently owned, not dominant in its field of operation, employs no more than 100 full-time or full-time equivalent employees, and

**EXHIBIT A**

earns less than $7 million in gross annual revenues for building design, $20 million in gross annual revenues for sales and services and $25 million in gross annual revenues for those businesses in the information technology sales or service business.

*Small Diverse Business* – A Department-verified minority-owned small business, woman-owned small business, veteran-owned small business, service-disabled veteran-owned small business, LGBT-owned small business, or disability-owned small business.

## AGREEMENT

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties hereby agree as follows:

1. <u>Subcontractor Representations</u>.  Subcontractor represents and warrants to Contractor as follows:

    (a) Subcontractor is self-certified as a Small Business in accordance with the requirements and procedures established by the Bureau of Diversity, Inclusion and Small Business Opportunities; [Subcontractor is also verified as a Small Diverse Business by the Bureau of Diversity, Inclusion and Small Business Opportunities in accordance with the requirements and procedures established by the Bureau;]

    (b) Subcontractor possesses the necessary knowledge, experience, expertise, capital, resources and personnel required to perform the Services it will provide under this Subcontract;

    (c) Subcontractor (i) is duly organized, validly existing and in good standing under the laws of its state of incorporation or organization, (ii) has the power and authority to own its properties and to carry on business as now being conducted, and (iii) has the power to execute and deliver this Subcontract;

    (d) The execution and performance by Subcontractor of the terms and provisions of this Subcontract have been duly authorized by all requisite action, and neither the execution nor the performance of this Subcontract by Subcontractor will violate any provision of law, any order of any court or other agency of government, the organizational documents of Subcontractor or any indenture, agreement or other instrument to which Subcontractor is a party, or by which Subcontractor is bound, or be in conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under, or except as may be provided by this Subcontract, result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of Subcontractor pursuant to, any such indenture agreement or instrument;

    (e) Subcontractor has obtained all licenses, permits and approvals required to perform the Services it will provide under this Subcontract; and

    (f) Subcontractor is not under suspension or debarment by the Commonwealth or any other governmental entity, instrumentality or authority.

**EXHIBIT A**

2. <u>Contractor Representations</u>.  Contractor represents and warrants to Subcontractor as follows:

(a) Contractor (i) is duly organized, validly existing and in good standing under the laws of its state of incorporation or organization, (ii) has the power and authority to own its properties and to carry on business as now being conducted, and (iii) has the power to execute and deliver this Subcontract;

(b) The execution and performance by Contractor of the terms and provisions of this Subcontract by Contractor have been duly authorized by all requisite action, and neither the execution nor the performance of this Subcontract will violate any provision of law, any order of any court or other agency of government, the organizational documents of Contractor or any indenture, agreement or other instrument to which Contractor is a party, or by which Contractor is bound, or be in conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under, or except as may be provided by this Subcontract, result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of Contractor pursuant to, any such indenture agreement or instrument;

(c) Contractor has obtained all licenses, permits and approvals required to perform the Services to be provided by Contractor under the Prime Contract; and

(d) Contractor is not under suspension or debarment by the Commonwealth or any other governmental entity, instrumentality or authority.

3. <u>Relationship of the Parties</u>.  The provisions of this Subcontract are not intended to create, nor shall be deemed or construed to create, any joint venture, partnership or other relationship between Contractor and Subcontractor, other than that of independent entities contracting with each other solely for the purpose of carrying out the provisions of this Subcontract. Neither of the Parties to this Subcontract, nor any of their respective employees, agents, or other representatives, shall be construed to be the agent, employee or representative of the other party. Neither party shall have the authority to bind the other party, nor shall a party be responsible for the acts or omissions of the other party, unless otherwise stated in this Subcontract. Similarly, the Parties expressly acknowledge that neither the Contractor nor the Subcontractor is an agent, employee or representative of the Commonwealth and each party covenants not to represent itself accordingly.

4. <u>Prime Contract Flow-Down</u>.

(a) General. This agreement is a subcontract under the Prime Contract and all provisions of the Prime Contract and any amendments thereto applicable to the Services being performed by the Subcontractor shall extend to and be binding upon the Parties as part of this Subcontract.

(b) Specific. The Parties agree to comply with the following provisions of the Prime Contract, which are incorporated herein by reference:

**EXHIBIT A**

      (1) The Americans with Disabilities Act Provisions.
      (2) Nondiscrimination/Sexual Harassment Clause.
      (3) Contractor Integrity Provisions.
      (4) Contractor Responsibility Provisions.

      (c) Termination. Should the Prime Contract be terminated pursuant to the terms and conditions provided in the Procurement, such termination shall have the same effect on this Subcontract. Payment for Services provided as of the date of termination must be made in accordance with the Section 13 of this Subcontract.

      (d) Audit Provisions. The Commonwealth shall have the right, at reasonable times and at a site designated by the Commonwealth, to audit the books, documents, and records of the Parties to the extent that the books, documents, and records relate to the Parties' compliance with the provisions set forth in subsection (b) above or to the Small Diverse Business or Small Business Commitment effectuated through this Subcontract. The Parties shall preserve such books, documents, and records for a period of three years from the date of final payment hereunder. The Parties shall give full and free access to all such records to the Commonwealth and/or its authorized representatives.

5.   Order of Precedence. The Letter of Intent, Procurement and Prime Contract are incorporated herein by reference into this Subcontract. In the event of any conflict or inconsistency among the individual components of this Subcontract, such conflict or inconsistency shall be resolved by observing the following order of precedence:

      (a) This Subcontract;
      (b) The Letter of Intent;
      (c) The Prime Contract; and
      (d) The Procurement.

6.   Further Action. The Parties shall take such actions and complete, execute and deliver any and all documents or instruments necessary to carry out the terms and provisions of this Subcontract, to effectuate the purpose of this Subcontract, and to fulfill the obligations of each party hereunder.

7.   Description of Services. Subcontractor will perform the following Services for the Contractor which Contractor is obligated to provide to the Commonwealth under the Prime Contract:

Subcontractor will provide the following staff and services for the base years of the Prime Contract:
-   Service Desk, as described in the Prime Contract, not including Tier 1/Dispatch services which are being provided by the Commonwealth.

**EXHIBIT A**

- Key Staff Personnel, as identified in the Prime Contract, to include a Project Manager and Business Analyst. Business Analysts to be full time for the first 6 months of the project. Project Manager to be part-time through December 31, 2017.

- Hardware, as described in the Prime Contract.

8. <u>Small Diverse Business or Small Business Commitment</u>. The above-referenced Services represent 35.09 % of the final negotiated total cost for the initial term of the Prime Contract. Any proposed change to the Small Diverse Business or Small Business Commitment must be submitted in writing to the Bureau which will make a recommendation to the Commonwealth Contracting Officer regarding a course of action.

9. Performance of Services. Subcontractor may not subcontract more than 50% of the work subcontracted to it hereunder without written permission from the Bureau. Subcontractor will perform the Services strictly in accordance with any applicable plans and specifications as contained in the Prime Contract and the reasonable deadlines set by Contractor in view of the requirements of the Prime Contract, and in a good workmanlike manner consistent with industry standards, meeting all applicable local, state and federal laws, regulations and policies.

10. <u>Location of Services</u>. Subcontractor will provide the Services at the following address(es): ___TreCom Office in Camp Hill, PA, and/or Commonwealth Offices in Harrisburg, PA._____

11. <u>Timeframe for Performance of Services</u>. The Services will be provided by Subcontractor during the initial term of the Prime Contract, and during any extensions, options or renewal periods of the Prime Contract exercised by the Commonwealth, as more specifically set forth below:

April 18, 2017 – April 17, 2022.

12. <u>Pricing of Services</u>. Subcontractor shall provide or perform the Services at the pricing specified below:

Estimated at $3,379,714.11 to be paid over the course of the Prime Contract.

13. <u>Payment for Services</u>. Contractor shall exert reasonable and diligent efforts to collect prompt payment from the Commonwealth. Contractor shall pay Subcontractor in proportion to amounts received from the Commonwealth which are attributable to the Services performed by Subcontractor. Contractor shall pay Subcontractor within fourteen (14) days after the Contractor receives such payment from the Commonwealth, unless the parties expressly agree upon a different payment schedule or structure as set forth below:

Subcontractor will invoice MJ Freeway at the beginning of each project quarter for the services to be provided during the project quarter. Payment will be made to Subcontractor by MJ Freeway within five (5) calendar days from the receipt of the applicable payment by MJ Freeway from the Commonwealth of Pennsylvania.

**EXHIBIT A**

14.	<u>Utilization Reports.</u>  Both the Contractor and Subcontractor shall complete Quarterly Utilization Reports (or similar type documents containing the same information) and submit them to the Contracting Officer and to the Bureau within ten (10) business days at the end of each quarter. This information will be used to determine the actual dollar amount paid to Subcontractor and will also serve as a record of fulfillment of Contractor's Small Diverse Business and Small Business Commitments.  If there was no activity during the quarter, then the form must be completed by stating "No activity in this quarter."  A late fee of $100.00 per day may be assessed against the Contractor if its Utilization Report is not submitted in accordance with the schedule above.

15.	<u>Change Orders</u>.  If the Commonwealth issues any change order or other formal contract instrument either expanding or limiting the work to be performed under the Prime Contract, the Parties shall accept such Change Orders.  Contractor agrees to provide Subcontractor with written notice of any such change orders that affect the Services to be provided by the Subcontractor hereunder as soon as practical after Contractor receives such notice. Any resulting increase or decrease in the Services, Small Diverse Business or Small Business Commitment provided for in Paragraphs 7 or 8 above must be in writing, mutually agreed to, and signed by both Parties and communicated to the Bureau. If the Parties are unable to reach an agreement regarding any adjustment to the Services, Small Diverse Business or Small Business Commitment necessitated by a Commonwealth Change Order, the Parties must submit the matter in writing to the Bureau which will make a recommendation to the Contracting Officer regarding a course of action.

16.	<u>Force Majeure</u>.  Neither party will incur any liability to the other if its performance of any obligation under this Subcontract is prevented or delayed by causes beyond its control and without the fault or negligence of either party. Causes beyond a party's control may include, but are not limited to, acts of God or war, changes in controlling law, regulations, orders or the requirements of any governmental entity, severe weather conditions, civil disorders, natural disasters, fire, epidemic and quarantines, general strikes throughout the trade, and freight embargoes.  The existence of such causes beyond a party's control shall extend the period for performance to such extent as may be necessary to enable complete performance in the exercise of reasonable diligence after the causes have been removed.

17.	<u>Dispute Resolution</u>.

(a)	The Parties will attempt to resolve any dispute arising out of or relating to this Subcontract through friendly negotiations.

(1) The Parties expressly acknowledge and confer upon the Bureau and Contracting Officer the authority to adjudicate disputes that the Parties cannot resolve amicably concerning the Parties' compliance with their Small Diverse Business and Small Business Commitments as provided in the Prime Contract and this Subcontract.

(2) The Bureau may recommend to the Contracting Officer a range of sanctions it deems appropriate if the Bureau determines a party has failed to satisfy or perform its Small Diverse Business or Small Business commitment.  Such sanctions include, but are not limited to, one or more of the following: a determination that the party is not

**EXHIBIT A**

responsible under the Contractor Responsibility Program; withholding of Prime Contract and/or Subcontract payments; suspension or termination of the Prime Contract and/or Subcontract together with consequential damages; revocation of the party's Small Business self-certification status and/or Small Diverse Business verification status; and/or suspension or debarment of one or both parties from future contracting opportunities with the Commonwealth.

(3) The Parties' acknowledge that their prior performance in meeting their Small Diverse Businesses and Small Businesses contractual obligations will be considered by the Bureau during future procurement scoring processes.  To the extent a party has failed to meet prior contractual commitments, the Bureau may recommend to the Issuing Office that the party be determined non-responsible for the limited purpose of eligibility to receive SDB/SB points or consideration as a qualified Small Diverse Business or Small Business.

(b) Nothing herein shall be construed to prevent either party from seeking such relief as provided by law in a court or tribunal of competent jurisdiction.

18. <u>Notices</u>. Any written notice to any party under this Subcontract shall be deemed sufficient if delivered personally, or by facsimile, telecopy, electronic or digital transmission (provided such delivery is confirmed), or by a recognized overnight courier service (e.g., DHL, Federal Express, etc.) with confirmed receipt, or by certified or registered United States mail, postage prepaid, return receipt requested, and sent to the following:

If to Contractor:

MJ Freeway
1601 Arapahoe St, Suite 800
Denver, CO 80202

If to Subcontractor:

TreCom Systems Group, Inc.
700 E. Township Line Road
Havertown, PA  19083
Attention: Contracts

19. <u>Waiver</u>.  No waiver by either party of any breach of this Subcontract shall be deemed to waive any other breach. No acceptance of payment or performance after any breach shall be deemed a waiver of any breach. No failure or delay to exercise any right by a party upon another's default shall prevent that party from later exercising that right, nor shall such failure or delay operate as a waiver of any default.

20. <u>Severability</u>.  If any provision of this Subcontract shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Subcontract is invalid or unenforceable, but that by

**EXHIBIT A**

limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

21. <u>Assignment</u>. Neither party may assign or transfer this Subcontract without the prior written consent of the Commonwealth. If Contractor's Prime Contract with the Commonwealth is assigned to another contractor, the new contractor must maintain the Small Diverse Business and Small Business Commitment set forth in the Prime Contract as implemented through this Subcontract.

22. <u>Applicable Law</u>.  This Subcontract shall be governed by the laws of the Commonwealth of Pennsylvania.

23. <u>Entire Agreement</u>. This Subcontract constitutes the entire agreement of the Parties regarding the subject of this Subcontract as of the date of execution.  No other agreement or understandings, verbal or written, expressed or implied, are a part of this Subcontract unless specified herein.

24. <u>Amendment</u>. This Subcontract may be modified or amended only if made in writing and signed by both Parties. Any proposed change to the Contractor's Small Diverse Business or Small Business Commitment to Subcontractor must be submitted in writing to the Bureau which will make a recommendation to the Contracting Officer regarding a course of action.

25. <u>Binding Effect</u>.  This Subcontract shall be binding upon, and inure to the benefit of, the Parties and their respective heirs, representatives, successors and assigns.

26. <u>Counterparts</u>.  This Subcontract may be executed by the Parties in counterparts, each of which together shall be deemed an original but all of which together shall constitute one and the same instrument.  A party's delivery of a duly executed signature page of this Subcontract in electronic format shall have the same force and effect as delivery of an original signature page.

## ADDITIONAL TERMS AND CONDITIONS

27. <u>Engagement</u>

   (a) <u>Statements of Work.</u> Notwithstanding anything to the contrary contained herein, from time to time, Contractor may submit to Subcontractor written work orders substantially in the form of Exhibit A that contain the terms (including specifications, delivery and performance schedules, and fees) for Services and Deliverables that Contractor desires Subcontractor to provide for the benefit of Commonweal. If Subcontractor begins to perform services under a work order, Subcontractor will be deemed to have accepted such work order.  Upon acceptance of a work order by Subcontractor (in writing, by performance, or otherwise), such work order will be a "Statement of Work." For the purposes of this Agreement, "Deliverables" means the items to be provided or actually provided by Subcontractor to Contractor (or to the Commonwealth)  under this Agreement, including items specifically designated or characterized as Deliverables in a Statement of Work

## EXHIBIT A

(b) <u>Performance of Services.</u>  Subcontractor will perform the Services in accordance with the terms of this Agreement, the applicable Statement of Work, and if applicable, terms of Contractor's agreement with its customer.  Except as otherwise provided in the applicable Statement of Work, Subcontractor will have exclusive control over the manner and means of performing the Services, including the choice of place and time, and will use its expertise and creative talents in performing the Services.  Subcontractor will provide, at its own expense, a place of work and all equipment, tools, and other materials necessary to complete the Statement of Work; however, to the extent necessary to complete the Statement of Work and for no other purpose, Contractor (or its customer(s)) may make its equipment or facilities available to Subcontractor at Subcontractor's reasonable request.  Subcontractor agrees that if Subcontractor uses Contractor's (or its customers') equipment or facilities, regardless of whether Contractor grants permission to Subcontractor to do so (which if granted, will be gratuitous), Subcontractor will be responsible for any injury (including death) to any person or damage to any property (including Contractor (or its customer(s)) property) arising from such use, regardless of whether or not such injury or damage is claimed to be based upon the condition of such equipment or facilities, or is alleged to be based upon the negligence of Contractor (or its customer(s)) in permitting such use.

(c) <u>Acceptance Procedures.</u>  Contractor will have thirty (30) days to evaluate any interim and final Deliverables (the "Acceptance Period") to ensure that they meet the specifications, requirements, and terms of this Agreement and are of professional, technical, and general quality consistent with industry standards.  If Contractor rejects any Deliverable during the Acceptance Period, Contractor may elect any of the following remedies (without limiting any other rights or remedies Contractor may have): (1) Contractor will grant additional time to Subcontractor to provide (at no additional charge to Contractor) corrected Deliverables subject to evaluation and acceptance in accordance with this Section 27(c), and will make a reasonable reduction in the fees to reflect the delay in performance; (2) Contractor will itself correct the Deliverables (or engage a third party to do so) and will deduct the costs and reasonable expenses associated with such correction from the fees owed to Subcontractor under the Statement of Work; or (3) Contractor will terminate the Statement of Work, return all Deliverables (but not Confidential Information therein) to Subcontractor, and Subcontractor will provide a refund to Contractor of any fees paid to Subcontractor under the Statement of Work.

(d) <u>Monitoring.</u>  Subcontractor will cooperate with any requests by Contractor (or its customer(s)) to monitor the Services in order to verify that such Services are being performed in accordance with this Agreement.  Subcontractor will use its best efforts to facilitate any such monitoring, including providing access to Subcontractor's equipment and facilities.  All documents and materials stored at Contractor's (or its customer(s)) facilities will be subject to inspection by Contractor (or its customer(s))  at any time without notice.

**EXHIBIT A**

(e) <u>Additional Agreements.</u> Subcontractor will ensure that each of its employees who will have access to any Confidential Information or perform any Services has entered into a binding written agreement that (1) is expressly for the benefit of Contractor and (2) protects Contractor's rights and interests to at least the same degree as the terms of this Agreement.

(f) <u>Employee Selection.</u> Contractor reserves the right to refuse or limit Subcontractor's use of any employee or to require Subcontractor to remove any employee already engaged in the performance of the Services. Contractor's exercise of such right will in no way limit Subcontractor's obligations under this Agreement.

(g) <u>Access Rules and Procedures.</u> While on Contractor's or Contractor's client's premises (or the premises of Contractor's customers), Subcontractor agrees to comply with Contractor's (and its clients') then-current access rules and procedures, including those procedures pertaining to safety, security, and confidentiality. Subcontractor agrees and acknowledges that Subcontractor has no expectation of privacy with respect to Contractor's telecommunications, networking, or information processing systems (including stored computer files, email messages, and voice messages) and that Subcontractor's activities, including any files or messages sent or received by Subcontractor, on or using any of those systems may be monitored, and the contents thereof may be reviewed and disclosed, at any time without notice.

(h) <u>Training.</u> Subcontractor will attend an initial training in person at Contractor's site to learn about Contractor's products and services. Subcontractor will attend an annual refresher training, which may be done remotely as agreed by the parties. All Subcontractor's costs in connection with attending such trainings (including without limitation lodging, travel, and meals) shall be at Subcontractor's expense.

28. <u>Compensation.</u>

(a) <u>Fees.</u> Notwithstanding anything to the contrary in this Agreement, Contractor will pay Subcontractor the fees specified in each Statement of Work ("Fees") as Subcontractor's sole and complete compensation for all Services, Deliverables and Intellectual Property Rights provided by Subcontractor under this Agreement. No other fees will be owed by Contractor under this Agreement.

(b) <u>Expenses.</u> Unless expressly provided otherwise in the applicable Statement of Work, Subcontractor will be solely responsible for all expenses incurred by Subcontractor or any of its employees or agents in connection with performing the Services or otherwise performing its obligations under this Agreement.

(c) <u>Invoicing.</u> Unless otherwise expressly provided in the applicable Statement of Work, (a) payment to Subcontractor of undisputed Fees will be due fourteen (14) days following Contractor's receipt of the applicable payment from the

**EXHIBIT A**

Commonwealth.  Subcontractor will maintain, in accordance with generally-accepted accounting principles, complete and accurate records of the work performed sufficient to document the Fees invoiced to Contractor for at least three (3) years following the date of the invoice, and will provide Contractor with such records at Contractor's request.  Unless otherwise expressly provided in the applicable Statement of Work, no Fees will be invoiced for completion of milestones until the associated Deliverables are accepted by Contractor in accordance with Section 27(c).

29. No Conflicts.  Subcontractor will refrain from any activity, and will not enter into any agreement or make any commitment, that is inconsistent or incompatible with Subcontractor's obligations under this Agreement, including Subcontractor's ability to perform the Services. Subcontractor represents and warrants that it is not subject to any contract or duty that would be breached by Subcontractor's entering into or performing its obligations under this Agreement or that is otherwise inconsistent with this Agreement.  Subcontractor will not disclose to Contractor, will not bring into Contractor's facilities, and will not induce Contractor to use any confidential or proprietary information of any third party.

30. Work Product.

   (a) Disclosure.

   (1) Disclosure of Work Product.  In accordance with the applicable Statement of Work, including any schedule therein, Subcontractor will deliver all Deliverables and disclose all other Work Product to Contractor (or any person designated by Contractor in writing) in the form specified in the Statement of Work or otherwise designated by Contractor.

   (2) Background and Third-Party Technology.  For the purposes of this Agreement, The parties acknowledge that certain Intellectual Property developed, acquired, or otherwise obtained by Subcontractor prior to, or independently of, this Agreement (collectively, "Background Technology") and certain Intellectual Property licensed or obtained by Subcontractor from third parties (collectively, "Third-Party Technology") may be used by Subcontractor in the performance of Services.  However, in no event will Subcontractor incorporate into the Deliverables or the Work Product any software code licensed under the GNU GPL or LGPL license or any similar "open source" license without the express written consent of Contractor.  Subcontractor represents and warrants that it has an unqualified right to license to Contractor and its designees all Background Technology as provided in Section 30(b)(5).

   (b) Ownership and Assignment of Work Product.

   (1) Definitions.

**EXHIBIT A**

a. "Intellectual Property" means all algorithms, application programming interfaces (APIs), apparatus concepts, Confidential Information, data, databases and data collections, designs, diagrams, documentation, drawings, flow charts, formulae, ideas and inventions (whether or not patentable or reduced to practice), know-how, materials, marketing and development plans, marks (including brand names, product names, logos, and slogans), methods, models, net lists, network configurations and architectures, procedures, processes, protocols, schematics, software code (in any form including source code and executable or object code), specifications, subroutines, techniques, test vectors, tools, uniform resource identifiers including uniform resource locaters (URLs), user interfaces, web sites, works of authorship, and other forms of technology.

b. "Intellectual Property Rights" means all past, present, and future rights of the following types, which may exist or be created under the laws of any jurisdiction in the world: (i) rights associated with works of authorship, including exclusive exploitation rights, copyrights, moral rights, and mask work rights; (ii) trademark and trade name rights and similar rights; (iii) trade secret rights; (iv) patent and industrial property rights; (v) other proprietary rights in Intellectual Property of every kind and nature; and (vi) rights in or relating to registrations, renewals, extensions, combinations, divisions, and reissues of, and applications for, any of the rights referred to in clauses (i) through (vi) of this sentence.

c. "Work Product" means (i) all Deliverables, (ii) all Intellectual Property, in any stage of development, that Subcontractor conceives, creates, develops, or reduces to practice in connection with performing the Services, and (iii) all tangible embodiments (including models, presentations, prototypes, reports, samples, and summaries) of each item of such Intellectual Property.

(2) <u>Generally.</u>  Subcontractor agrees that all Work Product will be the sole and exclusive property of Contractor.  Except for Subcontractor's Intellectual Property Rights in the Background Technology, Subcontractor hereby irrevocably and unconditionally assigns to Contractor (and/or its customer(s), as directed by Contractor) all right, title, and interest worldwide in and to the Work Product and all Intellectual Property Rights thereto.  Subcontractor understands and agrees that Subcontractor has no right to use the Work Product except as necessary to perform the Services for Contractor.

(3) <u>Trademarks and Trade Names.</u>  Without limiting the generality of Section 30(b)(2), Subcontractor will have no interest in any trademark or trade name in the Work Product; Contractor will be the sole and exclusive owner of all right, title, and interest in and to all such trademarks and trade names.  Any and all use of such trademarks and trade names by Subcontractor will be deemed made by Contractor

for the purposes of trademark registration and will inure solely to the benefit of Contractor for such purposes. Subcontractor will not contest, oppose, or challenge Contractor's ownership of the trademarks and trade names in the Work Product, or do anything to impair Contractor's ownership or rights in such trademarks and trade names. Subcontractor agrees that it will not create, adopt, or use a corporate name, trade name, trademark, or any other designation that includes any trademark or trade name of Contractor (including those in the Work Product) or a term confusingly similar to any such trademark or trade name. In particular, Subcontractor agrees that it will not register, or attempt to register, in any jurisdiction worldwide any trademark or trade name of Contractor (including those in the Work Product) or a term confusingly similar to any such trademark or trade name.

(4)     <u>Assignment and Waiver of Other Rights</u>.  If any Intellectual Property Rights, including moral rights, in the Work Product, except for Intellectual Property Rights in the Background Technology, cannot (as a matter of law) be assigned by Subcontractor to Contractor as provided in Section 30(b), then (i) Subcontractor unconditionally and irrevocably waives the enforcement of such rights and all claims and causes of action of any kind against Contractor with respect to such rights, and (ii) to the extent Subcontractor cannot (as a matter of law) make such waiver, Subcontractor unconditionally grants to Contractor an exclusive, perpetual, irrevocable, worldwide, fully-paid license, with the right to sublicense through multiple levels of sublicensees, under any and all such rights (x) to reproduce, create derivative works of, distribute, publicly perform, publicly display, digitally transmit, and otherwise use the Work Product in any medium or format, whether now known or hereafter discovered, (y) to use, make, have made, sell, offer to sell, import, and otherwise exploit any product or service based on, embodying, incorporating, or derived from the Work Product, and (z) to exercise any and all other present or future rights in the Work Product.

(5)     <u>License of Background Technology.</u>  Subcontractor unconditionally grants to Contractor (and/or the Commonwealth as directed by Contractor) a non-exclusive, perpetual, irrevocable, worldwide, fully-paid right and license, with the right to sublicense through multiple levels of sublicensees, under all of Subcontractor's Intellectual Property Rights in any Background Technology incorporated into or necessary for Contractor (and/or its customer(s), as directed by Contractor) to fully utilize and capitalize the Work Product, (a) to reproduce, create derivative works of, distribute, publicly perform, publicly display, digitally transmit, and otherwise use the Work Product in any medium or format, whether now known or hereafter discovered, (b) to use, make, have made, sell, offer to sell, import, and otherwise exploit any product or service based on, embodying, incorporating, or derived from the Work Product, and (c) to exercise any and all other present or future rights in the Work Product.

(6)     <u>Assignment of Rights to Third-Party Technology.</u>  Unless the applicable Statement of Work expressly provides otherwise, Subcontractor hereby assigns to

**EXHIBIT A**

        Contractor (and/or its customer(s), as directed by Contractor) all of Subcontractor's licenses and other rights to all Third-Party Technology incorporated into the Work Product. If such rights cannot be validly assigned to Contractor without the consent of a third party, Subcontractor will use its best efforts to obtain such consent (at Subcontractor's expense) and will indemnify and hold harmless Contractor and its affiliates, employees, and agents from and against all liabilities, losses, damages, costs, and expenses (including attorneys' fees) arising from Subcontractor's failure to obtain such consent.

    (c)    <u>Representations Regarding Work Product.</u> Subcontractor represents, warrants, and covenants that:

        (1) Subcontractor will not, in the course of performing the Services, infringe or misappropriate, and neither the Work Product nor any element thereof will infringe or misappropriate, any Intellectual Property Right of any other person,

        (2) neither the Work Product nor any element thereof will be subject to any restriction, mortgage, lien, claim, pledge, security interest, or encumbrance when delivered by Subcontractor to Contractor;

        (3) Subcontractor will not grant, directly or indirectly, any right or interest in the Work Product (other than any Background Technology it may contain) to any other person; and

        (4) All individuals (including Subcontractor's employees) who contribute to or participate in the conception, creation, or development of the Work Product will have unconditionally and irrevocably assigned all of their right, title, and interest in and to the Work Product (and all Intellectual Property Rights thereto) to Subcontractor (or directly to Contractor) before being allowed to begin performing Services.

31.    <u>Confidentiality.</u>

    (a)    For the purposes of this Subcontract, "Confidential Information" means any and all information related to Contractor's (or its customer(s)) business (including trade secrets, technical information, business forecasts and strategies, marketing plans, customer and supplier lists, personnel information, financial data, and proprietary information of third parties provided to Contractor in confidence) that is labeled or identified as "confidential" or "proprietary" or that Subcontractor otherwise knows, or would reasonably be expected to know, Contractor(or its customer(s)) considers to be confidential or proprietary or Contractor has a duty to treat as confidential.

    (b)    <u>Use and Disclosure.</u> During the term of this Agreement and at all times thereafter, Subcontractor will (1) hold all Confidential Information in strict trust and confidence, (2) refrain from using or permitting others to use Confidential

**EXHIBIT A**

    Information in any manner or for any purpose not expressly permitted or required by this Agreement, and (3) refrain from disclosing or permitting others to disclose any Confidential Information to any third party without obtaining Contractor's express prior written consent on a case-by-case basis.

  (c) <u>Standard of Care.</u>  Subcontractor will protect the Confidential Information from unauthorized use, access, or disclosure in the same manner as Subcontractor protects its own confidential or proprietary information of a similar nature, and with no less than the greater of reasonable care and industry-standard care.

  (d) <u>Exceptions</u>.  Subcontractor's obligations under Sections 31(b) and 31(c) will terminate with respect to any particular information that Subcontractor can prove, by clear and convincing evidence, (i) Subcontractor lawfully knew prior to Contractor's first disclosure to Subcontractor, (ii) a third party rightfully disclosed to Subcontractor free of any confidentiality duties or obligations, or (iii) is, or through no fault of Subcontractor has become, generally available to the public. Additionally, Subcontractor will be permitted to disclose Confidential Information to the extent that such disclosure is (x) expressly approved in writing by Contractor, (y) necessary for Subcontractor to enforce its rights under this Agreement in connection with a legal proceeding, or (z) required by law or court order, provided that Subcontractor immediately notifies Contractor in writing of such required disclosure and cooperates with Contractor, at Contractor's reasonable request and expense, in any lawful action to contest or limit the scope of such required disclosure, including filing motions and otherwise making appearances before a court.

  (e) <u>Removal; Return.</u>  Subcontractor will not remove any tangible embodiment of any Confidential Information from Contractor's (or its customers') facilities or premises without Contractor's express prior written consent.  Upon Contractor's request and upon any termination or expiration of this Agreement, Subcontractor will promptly (1) return to Contractor or, if so directed by Contractor, destroy all tangible embodiments of the Confidential Information (in every form and medium), (2) permanently erase all electronic files containing or summarizing any Confidential Information, and (3) certify to Contractor in writing that Subcontractor has fully complied with the foregoing obligations.

32 <u>Indemnification.</u>  Subcontractor will indemnify and hold harmless Contractor and its customers, affiliates, employees, and agents from and against any and all liabilities, losses, damages, costs, and other expenses (including attorneys' and expert witnesses' costs and fees) arising from or relating to any breach of any representation, warranty, covenant, or obligation of Subcontractor in this Agreement or the Prime Contract or any intentional misconduct or negligence by Subcontractor or any of its employees, agents, or subcontractors in performing the Services.  In the event of any third-party claim, demand, suit, or action (a "Claim") for which Contractor (or any of its affiliates, employees, customers, or agents) is or may be entitled to indemnification hereunder, Contractor may, at its option, require Subcontractor to defend such Claim at

**EXHIBIT A**

Subcontractor's sole expense.  Subcontractor may not agree to settle any such Claim without Contractor's express prior written consent.

33. <u>Limitation of Liability.</u>  IN NO EVENT WILL CONTRACTOR OR ITS CUSTOMERS, INCLUDING COMMONWEALTH, BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, EXEMPLARY, SPECIAL, OR INCIDENTAL DAMAGES ARISING FROM OR RELATING TO THIS AGREEMENT.  CONTRACTOR'S TOTAL CUMULATIVE LIABILITY IN CONNECTION WITH THIS AGREEMENT, WHETHER IN CONTRACT OR TORT OR OTHERWISE, WILL NOT EXCEED THE AGGREGATE AMOUNT OF FEES OWED BY CONTRACTOR TO SUBCONTRACTOR FOR SERVICES PERFORMED UNDER THIS AGREEMENT.

34. <u>Prime Contract</u>. Subcontractor shall perform the Services and deliver the Work Product in a timely and professional manner and in compliance with all terms and conditions of the Prime Contract that relate to Contractor's performance as though such terms and conditions applied to Subcontractor.  Subcontractor further agrees that it will not perform any additional services under the Prime Contract without first obtaining the written approval of Contractor. Subcontractor shall promptly pay to Contractor to the extent Contractor is required to pay Client (or Contractor may deduct from payments to Subcontractor) all other amounts that Client withholds from payment because of the actual or alleged manner in which Subcontractor performs the Services and Work Product or any failure of the Services or Work Product to conform to the requirements of the Prime Contract. Contractor may terminate this Agreement immediately upon notice to Subcontractor if (a) the Client terminates the Prime Contract or any portion thereof; or (c) Subcontractor commits any act or omission which would constitute a default of Contractor under the Prime Contract. Subcontractor hereby represents and warrants that the performance of the Services and Work Product and the performance of Subcontractor's obligations hereunder on behalf of Contractor shall not cause Contractor to be in breach of any representation, warranty, or other obligation of Contractor in the Prime Contract as it may relate to the Services or Work Product, the Subcontractor work product or other obligations of Contractor under the Prime Contract to be performed by Subcontractor pursuant to this Subcontract Agreement.  Subcontractor makes the same representations and warranties to Contractor as Contractor makes to Client under the terms of the Prime Contract with respect to Work Product, Services and related matters.  Subcontractor represents and warrants that, as it relates to the Services and Work Product, it shall comply with the Prime Contract, as if Subcontractor were Contractor.  Subcontractor shall immediately notify Contractor in the event that there is any noncompliance with the Prime Contract.  Subcontractor will indemnify, defend, and hold Contractor harmless from any claim, suit, damage, fine, fee, penalty, expense, or other loss arising out of or related to the breach of the Prime Contract by Subcontractor.

**EXHIBIT A**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Subcontract to be executed by their duly authorized officers as set forth below.

| Contractor | Subcontractor |
|---|---|
| *MJ Freeway, LLC* | *TreCom Systems Group, Inc.* |
| By: *[signature]* | By: *[signature]* |
| Signature | Signature |
| Amy A. Poinsett | Phillip R. Gring |
| Printed Name | Printed Name |
| CEO | COO |
| Title | Title |
| May 26, 2017 | May 30, 2017 |
| Date | Date |

**EXHIBIT A**