IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**TRECOM SYSTEMS GROUP, INC.,**

*Plaintiff,*

v.

**MJ FREEWAY, LLC,** *et al.*

*Defendants.*

Case No. 2:21-cv-01575-JDW

**MEMORANDUM**

Trials result in a winner and a loser. Often the losing side, still convinced of its own position, is left to exclaim, "Inconceivable!"[1] But our system of civil justice doesn't look at cases through the eyes of the losing party. Instead, a judge sustains a jury's verdict as long as the evidence, viewed in the light most favorable to the prevailing party, supports it.

In this case, our Vizzini is MJ Freeway, LLC, which defended itself in a six-day trial alleging that it breached a contract between it and TreCom Systems Group, Inc., only to have a jury find against it and award TreCom $4.2 million. Now, MJ Freeway asks me to find the jury's verdict inconceivable because there was not enough evidence to support the jury's determination of the contract that governed the relationship between TreCom and MJ Freeway; TreCom did not present sufficient evidence to support the jury's

---

[1] THE PRINCESS BRIDE (Act III Communications 1987).

damages award; and the jury's damages award ran afoul of a contractual limitation of liability provision. After viewing the evidence in the appropriate light, I am cast as Inigo Montoya. When MJ Freeway says the jury's verdict is "inconceivable," I am left to respond, "You keep using that word. I do not think it means what you think it means."[2] It doesn't, and so I will deny MJ Freeway's posttrial motions. TreCom, for its part, wants me to award it both prejudgment and postjudgment interest. I will do so for the most part, with some limits on its request for prejudgment interest.

I.   **LEGAL STANDARD**

   A.   **Judgment As A Matter Of Law**

When a "court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." FED. R. CIV. P. 50(b). Upon a renewed motion, a court can either allow the judgment on the verdict, order a new trial, or direct judgment as a matter of law. Rule 50(b)(1)–(3). If a court directs a verdict, it must also decide whether a new trial is warranted. Rule 50(c).

A court may grant a Rule 50(b) motion "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence" to support the jury's verdict. *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 168 (3d Cir. 2002) (quotations omitted). In the Third

---

[2] *Id.*

Circuit, post-trial motions for JMOL are granted "sparingly" and only where "the record is critically deficient of the minimum quantum of evidence in support of the verdict." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009) (quotations omitted). Thus, such motions "may be granted 'only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Mancini v. Northampton Cnty.*, 836 F.3d 308, 314 (3d Cir. 2016) (quotations omitted). In resolving the motion, a court "may not weigh the evidence, determine the credibility of witnesses, or substitute [its] version of the facts for the jury's version." *Id.*

### B. New Trial

A Rule 50 motion "may include an alternative or joint request for a new trial under Rule 59." FED. R. CIV. P. 50(b). After a jury trial, a court may grant a new trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). A court should grant a new trial "only when the great weight of the evidence cuts against the verdict and … a miscarriage of justice would result if the verdict were to stand." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (cleaned up) (quotations omitted). An error of law may be grounds for a new trial, but only when the error is so prejudicial that it affects a party's "substantial rights." FED. R. CIV. P. 61. Granting a new trial is discretionary. *See Foster v. Nat'l Fuel Gas Co.*, 316 F.3d 424, 429 (3d Cir. 2003).

### C. Alter Or Amend Judgment

The purpose of a motion to alter or amend judgments under Rule 59(e) is "to correct manifest errors of law or fact or to present newly discovered evidence." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (quotations omitted). Therefore, a Rule 59(e) motion is granted only when there is: "(1) a change in controlling law; (2) new evidence; or (3) a need to correct a clear error of law or prevent manifest injustice." *Id.*

## II.   ANALYSIS

### A.   Operative Contract

At its core, this case is about what contract controlled the relationship between TreCom and MJ Freeway. After the Pennsylvania Department Of General Services awarded MJ Freeway a Prime Contract for helpdesk support services in connection with the Commonwealth's medical marijuana program, MJ Freeway and TreCom executed a subcontract dated May 4, 2017 (the "May 4 Subcontract"). Pennsylvania officials apparently rejected that agreement. On May 26, 2017, MJ Freeway sent TreCom a revised subcontract—a version of which appeared as Appendix N to the public bid documents that later formed the Prime Contract (the "Appendix N Subcontract"). MJ Freeway signed the Appendix N Subcontract before sending it. TreCom made changes and sent back a countersigned version on May 30, 2017. MJ Freeway did not affirmatively accept or reject the changes, and both parties began to perform. In August 2020, MJ Freeway invoked the termination provision of the May 4 Subcontract to terminate TreCom.

Although many of the terms in the May 4 Subcontract and the Appendix N Subcontract are similar, there are some important differences between the two, including the following:

| | **May 4 Subcontract**[3] | **Appendix N Subcontract**[4] |
|---|---|---|
| Termination | "MJ Freeway may terminate this Agreement or any Statement of Work at any time with or without cause for its convenience, effective upon thirty (30) days prior written notice to Subcontractor." § 12.1. | "Any proposed change to the Small Diverse Business or Small Business Commitment must be submitted in writing to the Bureau which will make a recommendation to the Commonwealth Contracting Officer regarding a course of action." ¶ 8. |
| Payment schedule | "Unless otherwise expressly provided in the applicable Statement of Work, (a) payment to Subcontractor of undisputed Fees will be due sixty (60) days following MJ Freeway's receipt of the invoice for such Fees, and (b) Subcontractor will submit invoices to MJ Freeway upon completion of the milestones specified in the applicable Statement of Work or, if no such milestones are specified, on a monthly basis for Services performed in the previous month." § 4.3. | "Unless otherwise expressly provided in the applicable Statement of Work, (a) payment to Subcontractor of undisputed Fees will be due fourteen (14) days following Contractor's receipt of the applicable payment from the Commonwealth." ¶ 28(c). |

---

[3] Trial Ex. 38.
[4] Trial Ex. 51A.

5

|  | **May 4 Subcontract**[3] | **Appendix N Subcontract**[4] |
|---|---|---|
| Choice Of Law/ Forum Selection | "This Agreement is governed by the laws of the State of Colorado without reference to any conflict of laws principles that would require the application of the laws of any jurisdiction. ... Subcontractor irrevocably consents to the personal jurisdiction of the state and federal courts located in Denver County, Colorado for any suit or action arising from or related to this Agreement, and waives any right Subcontractor may have to object to the venue of such courts. Subcontractor further agrees that these courts will have exclusive jurisdiction over any such suit or action initiated by Subcontractor against MJ Freeway." § 13.1. | "This Subcontract shall be governed by the laws of the Commonwealth of Pennsylvania." ¶ 22. |

The Appendix N Subcontract also added various obligations that the May 4 Subcontract did not include. For example, it barred TreCom from subcontracting "more than 50% of the work subcontracted to it hereunder without written permission from the Bureau." (Trial Ex. 51A ¶ 8.) It required both MJ Freeway and TreCom to complete Quarterly Utilization Reports and to submit them to the Commonwealth within 10 business days of the end of each quarter and provided for a late fee for failure to comply. (*Id.* ¶ 14.) It required TreCom be a certified Small Diverse Business. (*Id.* ¶ 1.) It also includes a dispute resolution provision that gave the Pennsylvania Department of General Services Bureau of Diversity, Inclusion and Small Business Opportunities the "authority to adjudicate

disputes that the Parties cannot resolve amicably concerning the Parties' compliance with their Small Diverse Business and Small Business Commitments ... ." (*Id.* ¶ 17(a)(1).)

During trial, MJ Freeway moved for judgment as a matter of law pursuant to Rule 50(a), arguing that TreCom had not demonstrated that there was consideration to support the cancellation or modification of the May 4 Subcontract. I denied that Motion. At the end of trial, the jury found for TreCom. The jury determined that both the May 4 Subcontract and the Appendix N Subcontract were valid, enforceable contracts. It also concluded that TreCom proved (a) that it and MJ Freeway made a written modification of the May 4 Subcontract that adopted the Appendix N Subcontract and (b) that it and MJ Freeway made a written cancellation of the May 4 Subcontract. That leaves the Appendix N Subcontract as the contract that governed the Parties' relationship.

In its post-trial motion, MJ Freeway renews its argument that there was no evidence at trial from which the jury could find additional consideration to support either a modification or a cancellation. It therefore seeks either a new trial or a judgment as a matter of law. But the jury had evidence before it to support its verdict.

Parties need additional consideration to modify or rescind an existing contract. *See Nicolella v. Palmer*, 248 A.2d 20, 23–24 (Pa. 1968).[5] However, when it comes to cancelling

---

[5] The May 4 Subcontract, which the jury found valid and enforceable, chooses Colorado law. Arguably, then, I should look to Colorado law to determine the standards for the modification or cancellation of the May 4 Subcontract. However, no Party has raised that choice-of-law issue in this case. In their pretrial memoranda and proposed jury

an existing contract, the surrender of mutual obligations satisfies the additional consideration requirement. See *Dreifus v. Columbia Exposition Salvage Co.*, 45 A. 370, 371 (Pa. 1900); *PennEnergy Res., LLC v. MDS Energy Dev., LLC*, 325 A.3d 756, 773–74 (Pa. Super. Ct. 2024). When I view the evidence in the light most favorable to TreCom, a reasonable juror could find that there was evidence to support the jury's conclusion that the Appendix N Subcontract controlled the Parties' relationship.

TreCom presented evidence, both exhibits and testimony, showing that MJ Freeway asked TreCom to cancel the May 4 Subcontract and replace it with the Commonwealth's standard "model" contract—the Appendix N Subcontract—and that TreCom agreed. (MJ Freeway does not argue otherwise.) TreCom also presented evidence of additional consideration to support either a modification or a cancellation of the May 4 Subcontract. Although many of the terms in the May 4 Subcontract and the Appendix N Subcontract are the same, there are substantive differences. Under the Appendix N Subcontract, MJ Freeway had to pay TreCom on a shorter timetable, the parties selected a different governing state law, adopted a new dispute-resolution mechanism, and altered the terms under which MJ Freeway could terminate TreCom. Those different or additional promises make the contracts different enough to constitute additional consideration.

---

instructions, the Parties focused only on Pennsylvania law. Therefore, to the extent that there's an argument for the application of Colorado law, it's waived. See *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) ("parties may waive choice-of-law issues"). I also have no reason to think that Colorado and Pennsylvania law differ.

Therefore, the evidence supports the jury's conclusion that the Appendix N Subcontract was the agreement governing the Parties' relationship.

MJ Freeway's arguments don't persuade me otherwise. MJ Freeway dismisses the distinctions between the two contracts because it argues that the new contract terms "are actually just repeated preexisting terms from the Prime Contract, which was incorporated by reference into both subcontracts." (ECF No. 179 at 3.) I disagree. The terms in the two contracts are different. The only way to ignore those differences would be for MJ Freeway to show that the Prime Contract had terms that were contrary to the May 4 Subcontract and the terms of the Prime Contract overrode the May 4 Subcontract. MJ Freeway didn't make that argument at trial, and it hasn't made such a showing now. In the absence of such a showing, I'm left to conclude that there were real, substantive changes between the May 4 Subcontract and the Appendix N Subcontract. Those changes amount to consideration for either a cancellation and new contract or a modification.

MJ Freeway also suggests that any changes to the contract were one-sided, meaning there was no consideration. That's wrong, though. Some of the changes to the contract appear to benefit TreCom, like the shortened payment terms. Others are less clearly tilted to one side or another, such as the change in prevailing law and the requirement that TreCom complete Quarterly Utilization Reports. Thus, there's enough evidence to conclude that both sides made additional commitments as part of the cancellation or modification.

Ultimately, there was sufficient evidence at trial to justify the jury's conclusion that the Appendix N Subcontract governed the Parties' relationship. In addition, MJ Freeway failed to show that the great weight of the evidence tilts in its favor, so I won't grant a new trial on this issue.

### B.  Damages

#### 1.  Compensatory damages

The jury awarded TreCom $4.2 million in compensatory damages. Courts have an "obligation [] to uphold the jury's award if there exists a reasonable basis to do so." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989). Although the jury cannot award damages based on pure speculation, "recovery will not be precluded simply because there is some uncertainty as to the precise amount of damages incurred." *Pugh v. Holmes*, 405 A.2d 897, 909 (1979). TreCom bore the burden to prove damages by a preponderance of the evidence and to provide the jury with a reasonable basis to estimate those damages. *See Greenberg v. McCabe*, 453 F. Supp. 765 (E.D. Pa. 1978), *aff'd*, 594 F.2d 854 (3d Cir. 1979).

TreCom did not present a lot of evidence to support the jury's damages calculation, but it presented enough. It offered a letter of intent from MJ Freeway that acknowledged that TreCom would serve as the subcontractor for the "contract beginning in 2016 and continuing five base years with [the] option for three renewal years" and Appendix G to the Prime Contract, which reflects this understanding. (Trial Ex. 53, 3). Paragraphs 8, 11,

and 12 of the Appendix N Subcontract state that TreCom was entitled to 35.09% of $3,379,714.11 for the first five years of the contract. TreCom's witness Philip Gring testified that, for the base five-year term, TreCom had $1,128,000 of outstanding invoices and $2,080,000 owed for the three option years. Mr. Gring also testified that, based on Right-To-Know requests to the Commonwealth, TreCom was due $1,054,000 from the change order payments MJ Freeway collected from the Commonwealth. Those figures total $4,264,546.30.

Although the record is not robust, that's enough for a reasonable jury to estimate the damages without speculation. The jury asked me to provide it with a copy of a demonstrative exhibit that Mr. Gring used, but I did not, so the jury was left to go off its memory of Mr. Gring's testimony. Its award of $4,200,000 suggests that it did just that.

MJ Freeway's arguments don't persuade me otherwise. *First*, MJ Freeway argues there was no evidence of a contract with a total value that permitted the jury to multiply 35.09% (the amount pledged to TreCom) and arrive at $4.2 million. The evidence could have been clearer on this point and could have included invoices that MJ Freeway submitted to the Commonwealth or records of payments that the Commonwealth made to MJ Freeway. But Mr. Gring's testimony about the amounts that MJ Freeway owed TreCom was enough, even if TreCom didn't present a fulsome accounting.

*Second*, MJ Freeway argues that any payments it received for change orders are outside the scope of what it might owe TreCom because change orders "go beyond the

negotiated contract terms." (ECF No. 175 at 14.) But the evidence at trial supports the jury's conclusion that the Commonwealth issued change orders pursuant to the Prime Contract between it and MJ Freeway, so the terms governing subcontractors would continue to apply. That conclusion makes sense, too, because otherwise the Commonwealth could use change orders to evade statutory requirements governing the use of small, diverse businesses. And the Appendix N Subcontract addresses change orders, which further supports the jury's conclusion that change orders were within the scope of the Parties' contract, including MJ Freeway's commitment to pay TreCom 35.09% of the price of any change order.

*Third*, MJ Freeway invokes a limitation of liability provision in the Appendix N Subcontract to argue that it did not have to pay TreCom for work that TreCom did not perform. The Appendix N Subcontract provides, "[i]n no event will contractor or its customers, including Commonwealth, be liable for any consequential, indirect, exemplary, special, or incidental damages arising from or relating to this Agreement. Contractor's total cumulative liability in connection with this agreement, whether in contract or tort or otherwise, will not exceed the aggregate amount of fees owed by contractor for services performed under this Agreement." (Trial Ex. 51A ¶ 33.)

Under Pennsylvania law, "[w]hen a written contract is clear and unambiguous, the parties' intent is contained in the writing itself." *Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1249 (Pa. 2015). "Unless otherwise specified, a contract's language shall be

12

given its plain and ordinary meaning." *Id.* "It is fundamental that one part of a contract cannot be so interpreted as to annul another part and that writings which comprise an agreement must be interpreted as a whole." *Shehadi v. Northeastern Nat. Bank of Pa.*, 378 A.2d 204, 206 (Pa. 1977). These principles lead me to reject MJ Freeway's interpretation of the Limitation of Liability provision.

The Limitation of Liability provision caps MJ Freeway's liability at the amount that it agreed to pay TreCom for the work that TreCom was to do, but the Appendix N Subcontract commits to paying TreCom a percentage of MJ Freeway's earnings, rather than an hourly or project-based amount. If the Limitation of Liability provision applied as MJ Freeway suggests, and MJ Freeway only had to pay TreCom for work that TreCom performed, it would undermine the concept of a payment in the form of a percentage of revenue because MJ Freeway could always have lowered TreCom's payment. When I reconcile the percentage payment commitment with the Limitation of Liability provision, I conclude that the clause caps MJ Freeway's liability at 35.09% of its revenue under the contract. That is, under no circumstances could TreCom recover more than 35.09% of the revenue that MJ Freeway received from the Commonwealth. Notably, I rejected MJ Freeway's interpretation of the Limitation of Liability provision at trial for these same reasons, and MJ Freeway has not offered any reason for me to revisit that decision. To the contrary, my decision was a legal one—I interpreted the contract. And MJ Freeway has not given me a basis to reconsider.

**2.     Interest**

In its post-trial motion, TreCom seeks an award of prejudgment and postjudgment interest. The two present different issues, though, so I will treat them separately.

**a.     Prejudgment interest**

Pennsylvania law permits an award of prejudgment interest in a case involving a breach of a commitment to pay a fixed or ascertainable amount of money. *See Cresci Const. Svcs., Inc. v. Martin*, 64 A.3d 254, 259 (Pa. Super. Ct. 2013) (citing Restatement (Second) of Contracts § 354). The statutory rate is 6%. *See* 41 Pa. C.S.A. § 202. Prejudgment interest is a form of damages to compensate an injured party for any delay. *See TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 39 A.3d 253, 264 (Pa. 2012). It begins to run as of the date that MJ Freeway breached the contract. *See Azer Sci. Inc. v. Quidel Corp.*, No. 5:21-cv-02972-JMG, 2023 WL 4671347, at *7 (E.D. Pa. July 20, 2023). The party seeking prejudgment interest has the burden of proving its entitlement to that interest. *See Black Gold Coal Corp. v. Shawville Coal Co.*, 730 F.2d 941, 944 (3d Cir. 1984).

When a party to a contract repudiates the contract before the time for performance, that action ripens into a breach prior to the time for performance. *See McCormick v. Fidelity & Cas. Co. of N.Y.*, 161 A. 532, 533 (Pa. 1932). Anticipatory breach requires an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so. *See Harrison v. Cabot Oil & Gas Corp.*, 110 A.3d 178, 184 (Pa. 2015).

When MJ Freeway terminated TreCom, MJ Freeway made an absolute and unequivocal refusal to perform the remaining provisions of the Appendix N Subcontract. It therefore committed an anticipatory breach, and TreCom could accelerate the claim to that date (August 4, 2020). At that time, TreCom had a claim to 35.09% of the remaining payments that the Commonwealth would make to MJ Freeway under the original term of the Prime Contract. Mr. Gring testified that that amount was $1,128,000, and the jury appears to have credited that testimony. TreCom is therefore entitled to prejudgment interest on that amount, accruing from the date of the repudiation at 6% simple interest, which totals $320,599.21.

MJ Freeway argues that I should limit this amount based on the Limitation of Liability provision in the Appendix N Subcontract. I disagree. Prejudgment interest under Pennsylvania law is available as a matter of right. If the Parties wanted to limit it, they needed to do so expressly. The Limitation of Liability provision doesn't do that. It limits various types of damages but makes no mention of prejudgment interest. I have no basis to conclude that the Parties modified a right to receive such interest implicitly when they explicitly limited other types of damages.

The outcome is different for the other two categories of damages that the jury awarded TreCom. Mr. Gring testified that MJ Freeway owed TreCom $1,054,000 for payments on change orders. But there's nothing in the record to determine when the Commonwealth issued any change orders or when it paid MJ Freeway for the work that it

performed on them. Without that information, there's no way to know when MJ Freeway's obligation to pay TreCom began. And, because there was never a guarantee that the Commonwealth would issue any change orders, there was nothing to accelerate when MJ Freeway repudiated the agreement.

Similarly, Mr. Gring testified that MJ Freeway owed TreCom $2,080,000 in payments for the three option years under the Prime Contract. But at the time of termination, the Commonwealth had not exercised those options, so TreCom could not accelerate payments due under those options to the date of termination. In fact, Mr. Gring testified at trial that the third option year under the Prime Contract would not end until April 2025, months **after** I entered judgment in the case. Any prejudgment interest on that option would just be a windfall for TreCom, not compensation for a delayed payment.

TreCom argues that I should permit it to conduct additional discovery to determine the dates relevant to the determination of prejudgment interest. I disagree. Discovery in this case lasted for years, and it closed on November 3, 2023. TreCom had every opportunity to obtain from MJ Freeway the information that it now seeks. Where a party in a case seeks to modify a scheduling order, it must show good cause. *See* FED. R. CIV. P. 16(b)(4). Reopening discovery would modify the scheduling order in this case. But TreCom has not shown the required good cause. It could have requested all the information about the Commonwealth's payment history during discovery. It therefore can't show good cause to modify the scheduling order to permit it to do so now.

### b. Postjudgment interest

Postjudgment interest accrues on "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. TreCom and MJ Freeway agree that TreCom is entitled to postjudgment interest, but they dispute when it begins to accrue. Postjudgment interest begins to accrue once a court enters an order quantifying the amount due. *See Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 147 (3d Cir. 2010).

In this case, I determined that MJ Freeway owes TreCom $4.2 million in compensatory damages on December 12, 2024, when I entered judgment in this case. So, postjudgment interest on that amount runs from that date. I am determining the amount of prejudgment interest as part of this decision, so postjudgment interest on prejudgment interest will begin to run on the date of this decision and the accompanying Order. I will direct the Parties to confer and submit a stipulation concerning the amount of postjudgment interest that accrues per day.

## III. CONCLUSION

TreCom presented sufficient evidence to support the jury's verdict on liability. MJ Freeway has not shown that the great weight of the evidence warrants overturning the verdict or ordering a new trial. Therefore, I will uphold the jury's award of $4,200,000 in damages. I will award TreCom $320,599.21 in prejudgment interest on the amount that the jury awarded for payments due on the Prime Contract but not on the option years or change orders. I will also award TreCom postjudgment interest at the statutory rate. I will

require TreCom and MJ Freeway to confer and file a stipulation regarding the amount of postjudgment interest per day. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 29, 2025